**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| BRITTANY PERROUX, )<br>              Plaintiff, )<br>    v.             )<br>              )<br>RENT RECOVERY SOLUTIONS, LLC, )<br>NATIONAL CREDIT AUDIT CORPORATION, )<br>PROCOLLECT, INC., COLUMBIA DEBT )<br>RECOVERY LLC d/b/a GENESIS CREDIT, I.Q. )<br>DATA INTERNATIONAL, )<br>              )<br>         Defendants. ) | Civil Action No.: 1:25-cv-00045 |

**VERIFIED COMPLAINT**

BRITTANY PERROUX f/k/a Brittany Harris ("Plaintiff") brings this action against defendants RENT RECOVERY SOLUTIONS, LLC ("Rent Recovery"), NATIONAL CREDIT AUDIT CORPORATION, ("Credit Audit") PROCOLLECT, INC. ("ProCollect"), COLUMBIA DEBT RECOVERY LLC d/b/a GENESIS CREDIT ("Columbia"), and I.Q. DATA INTERNATIONAL, INC., ("IQ Data") (collectively "Defendants") as follows:

**PRELIMINARY STATEMENT**

1.      Twenty-three million people are victims of identity theft each year.[1]  Plaintiff is a victim of identity theft.

2.      In 2022, Plaintiff first learned that her identity was stolen. Someone fraudulently used Plaintiff's identity to lease an apartment in 2020. Plaintiff did not learn about the stolen identity until a collection showed up on her credit reports. Plaintiff quickly filed a police report and worked hard to remove the fraudulent collection. But as Plaintiff worked to remove that

---

[1] Victims of Identity Theft, 2018, 1. U.S. Dept. of Justice, Bureau of Justice Statistics.  April 2021, NCJ 256085.

fraudulent collection from her account additional fraudulent accounts showed up on her credit reports. Plaintiff would not learn of the fraudulent activity until an account was reported to the credit reporting agencies: Trans Union LLC ("Trans Union"), Experian Information Solutions ("Experian"), and Equifax Information Services ("Equifax"). Plaintiff froze her credit reports. But, still, fraudulent accounts would appear on her credit reports as Plaintiff's credit was inappropriately pulled long before the credit freeze was put in place. In all, at least 30 fraudulent accounts appeared on Plaintiff's credit reports in addition to false names and false addresses. Through Plaintiff's hard work and perseverance, many of the accounts are gone, but not all of them. These fraudulent accounts are causing damage to Plaintiff.

3.      Plaintiff previously filed a lawsuit in this venue to combat prior erroneous tradelines due to identity theft against the three major credit reporting agencies: Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc.("Experian") and Trans Union, LLC ("Trans Union"); those defendants are not named in this case. See *Perroux v. Equifax Information Services LLC*, No. 1-24-CV-00107-JRN, 2024 U.S. Dist. LEXIS 177964, at *1 (W.D. Tex. Sep. 29, 2024). Plaintiff has resolved these claims with all of the named defendant credit reporting agencies through various individual settlement agreements.

4.      The Defendants named in this action failed to perform reasonable investigations or take their role in the damages caused to Plaintiff seriously making this litigation necessary.

5.      Defendants continue to report false information to the credit reporting agencies and/or are attempting to collect debts not owed by Plaintiff. The filing of this lawsuit is Plaintiff's only remaining alternative to get her credit back to the way it should be.

6.      Defendants have failed in their grave responsibilities of fairness, impartiality, and a respect for Plaintiff's right of privacy, which failures are causing damage to Plaintiff.

7.      Consequently, Plaintiff brings this action against Defendants for damages resulting from their violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), and the Texas Debt Collection Act, Tex. Fin. Code Ann. § 392. et seq., ("TDCA").

8.      "Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681 (a)(1). "Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681 (a)(3).

9.      The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The statute provides for civil liability for a wide range of abusive actions, including, but not limited to, the false representation of the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A). Consequently, the Fifth Circuit has opined that Congress "clearly intended the FDCPA to have a broad remedial scope." *Hamilton v. United Healthcare of La., Inc*., 310 F.3d 385, 392 (5th Cir. 2002). The FDCPA "should therefore be construed broadly and in favor of the consumer." *Daugherty v. Convergent Outsourcing, Inc*., 836 F.3d 507, 511 (5th Cir. 2016). The FDCPA prohibits the use of "**any false, deceptive, or misleading representation or means** in connection with the collection of any debt." *Daugherty*, at 511, 512 (citing and quoting 15 U.S.C. § 1692(e); *Manuel v. Merchs. & Prof'l Bureau, Inc*., 956 F.3d 822, 826 (5th Cir. 2020).

10.      Similarly, the Texas Legislature "passed the [Texas] Debt Collection Act to prevent creditors from preying on a consumer's fears and ignorance of the law to pursue allegedly delinquent debts." *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986).

11.    The TDCA applies to debt collectors, *i.e.*, anyone who collects debts, including creditors.[2] The Texas Supreme Court found that a "review of its history indicates that the [Texas] Legislature passed the [Texas] Debt Collection Act to prevent creditors from preying on a consumer's fears and ignorance of the law to pursue allegedly delinquent debts." *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986); *See also*, *Dixon v. Brooks*, 604 S.W.2d 330 (Tex. App.—Houston [14th Dist.] July 9, 1980; and *Monroe v. Frank*, 936 S.W.2d 654, 1996 Tex. App. LEXIS 3756 (Tex. App.—Dallas [5th Dist.] Aug. 16, 1996); *Lamell v. OneWest Bank, FSB, LP*, 485 S.W.3d 53, 62-63 (Tex. App—Houston [14th Dist.] Nov. 17, 2015); *Goswick v. Equifax Info. Servs., LLC*, Case No. SA-22-CV-1204-JKP-ESC, 2023 U.S. Dist. LEXIS 163086 (W.D. Tex. Sept. 14, 2023).

12.    Under the TDCA, the term "debt collector' means a person who directly or indirectly engages in debt collection…" Tex. Fin. Code Ann. § 392.001(6). "Debt collection" means "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* at § 392.001(5). And the term "Creditor" means "a party, other than a consumer, to a transaction or alleged transaction involving one or more consumers." *Id.* at § 392.001(3).

13.    Plaintiff seeks to enforce those policies and civil rights which are expressed through the TDCA and FDCPA. The TDCA and FDCPA encourage consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001); *Young v. Asset Acceptance, LLC, Civil*

---

[2] "The TDCA's definition of debt collector is broader than the FDCPA's definition." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722-24 & 727 (5th Cir. 2013) (the Fifth Circuit has ruled that creditors are subject to liability under the TDCA); *See also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208-09 (5th Cir. 1985) (Mortgage servicers and assignees are debt collectors, and therefore are covered, under the TDCA.).

*Action*, No.:3:09-CV-2477-BH, 2011 WL 618274, *2 (N.D. Tex. 2011). Over one-third of debt collection complaints to the CFPB are about attempts **to collect a debt that is not owed** as is the case here. *Fair Debt Collection Practices Act—CFPB Annual Report 2015* at 13 (2015).[3]

## JURISDICTION & VENUE

14.     Jurisdiction is proper under 28 U.S.C. § 1331, ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), 28 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce…") and 15 U.S.C. § 1692k (FDCPA) (An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, ...") and 15 U.S.C. §1681p (FCRA).

15.     The Court also has supplemental jurisdiction over the TDCA claims under 28 U.S.C. § 1367.

16.     Venue is proper in this judicial district because Defendants engaged in the complained of acts in this district. 28 U.S.C. § 1391(b) ("A civil action may be brought in— (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ..."). Also, Plaintiff resides in this district and a substantial part of the acts and omissions giving rise to the claims occurred within this judicial district.

## PARTIES

17.     Plaintiff is a natural person who resided in Travis County, Texas during a substantial part of the events giving rise to her claims.

---

[3] http://files.consumerfinance.gov/f/201503_cfpb-fair-debt-collection-practices-act.pdf (last visited November 2, 2022).

18.    Plaintiff is a consumer as defined by the FCRA, 15 U.S.C. §1681a(c): "an individual."

19.    Plaintiff is also a "consumer" as defined in both the FDCPA and TDCA. *See* 15 U.S.C. § 1692a(3) and Tex. Fin. Code Ann. §§ 392.001(1) & 392.001(2), respectively.

20.    Rent Recovery is a limited liability company with its principal place of business located at 1945 The Exchange, Ste. 120, Atlanta, GA 30339. Rent Recovery's registered agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company located at 211 E. 7th Street, Suite 620, Austin, TX 78701-3136. Rent Recovery is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). Rent Recovery is also a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection is the principal purpose of Rent Recovery's business. Rent Recovery is a Texas registered debt collector and is also bonded in Texas through Travelers Casualty and Surety Company of America (File#: 20070186; Bond#: 7752241114TX).

21.    Credit Audit is a corporation with its principal place of business located at 14770 Coit Road, Suite 1000 Dallas, TX 75251. Credit Audit's registered agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company located at 211 E. 7th Street, Suite 620, Austin, TX 78701-4234. Credit Audit is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). Credit Audit is also a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection is the principal purpose of Credit Audit's business. Credit Audit is a Texas registered debt collector and is also bonded in Texas through United States Fire Insurance Company (File#: 20180070; Bond#: 612401695).

22.    ProCollect is a corporation with its principal place of business located at 12170 Abrams Road 100, Dallas, TX 75243. ProCollect's registered agent is John W. Bowdich located at 8150 N. Central Expy Suite 500, Dallas, TX 75206 USA. ProCollect is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). ProCollect is also a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection is the principal purpose of ProCollect's business. ProCollect is a Texas registered debt collector and is also bonded in Texas through Western Surety Company (File#: 20050228; Bond#: 69813436).

23.    Columbia is a limited liability company with its principal place of business located at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208. Columbia's registered agent is Illinois Corporation Service Company 211 E. 7th Street, Suite 620 Austin, TX 78701. Columbia is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). Columbia is also a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection is the principal purpose of Columbia's business. Columbia is a Texas registered debt collector and is also bonded in Texas through United States Fire Insurance Company (File#: 20210083; Bond#: 602-133026-4).

24.    IQ Data is a corporation with its principal place of business located at 21222 30th Drive SE C210 Bothell, WA 98021-7012. IQ Data's registered agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company located at 211 E. 7th Street, Suite 620, Austin, TX 78701. IQ Data is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). IQ Data is also a "debt collector" as that term is defined by Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection is the principal purpose of IQ

Data's business. IQ Data is a Texas registered debt collector and is also bonded in Texas through Liberty Mutual Insurance Company (File#: 20150118; Bond#: 016065812).

25.    All Defendants regularly conduct business in the state of Texas.

## FACTS

**A.    Identity theft issues.**

26.    Plaintiff is unsure how her identity was stolen. Plaintiff first learned of the identity theft in 2022, and now, after more than two years have passed, she is still working to clear fraudulent accounts that have been reported to the credit reporting agencies.

27.    Plaintiff has taken innumerable steps to combat the false reporting that has resulted from the theft of her identity, including the below police reports and Identity Theft Reports:

- May 31, 2022: Submitted a Federal Trade Commission ("FTC") Identity Theft Report regarding a "Mag and May" account with a balance of $9,481.00;

- May 31, 2022: Filed a report with the Johnson City Police Department after meeting with a Lieutenant in person;

- July 15, 2022: Put fraud alerts on her Equifax, Experian, and Trans Union credit reports;

- July 15, 2022: Put a security freeze on her Equifax, Experian, and Trans Union credit reports;

- July 21, 2022: Submitted another FTC Identity Theft Report regarding four new fraudulent accounts that Plaintiff discovered on her credit reports;

- September 14, 2022: Received information from the Johnson City Police Department about one of the fraudulent apartment lease applications;

- March 20, 2023: Filed a report with the Granbury Police Department about 5 more fraudulent accounts that appeared on Plaintiff's credit reports.

28.     Through a great deal of perseverance, expense, and emotional distress many of the reported false accounts have been closed and removed from Plaintiff's credit reports. However, several fraudulent items remain; and with regard to the items that were ultimately removed, their removal did not occur in any reasonable or timely fashion, such that these items also provide the basis for violations of the FCRA, FDCPA and the TDCA.

**B.    Facts Related to Rent Recovery Solutions, LLC.**

29.     Rent Recovery is a third-party debt collector that furnishes information to Equifax, Experian, and Trans Union to collect third-party debts.

30.     On September 9, 2022, Plaintiff discovered one of several collections on her credit reports that did not belong to her. Rent Recovery was reporting a false collection account in which the original creditor was Arbors on Oakmont ("Arbors") to Trans Union. The collection stemmed from a fraudulent apartment lease.

31.     On September 22, 2022, Plaintiff sent a dispute letter, via certified mail, to Trans Union stating that the Arbors collection account was the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police report with her dispute letter to Trans Union. USPS tracking shows Trans Union received the dispute letter on September 25, 2022.

32.     Upon information and belief, Trans Union forwarded Plaintiff's September 2022 certified dispute letter regarding the false Arbors collection account to Rent Recovery for investigation.

33.     Plaintiff did not receive a response to her September 2022 dispute letter from Trans Union.

34.    On March 31, 2023, Plaintiff accessed her credit reports and discovered that Trans Union deleted the false Arbors collections account tradeline. However, Rent Recovery was now reporting the false Arbors collection account to Experian and Equifax. In addition, Rent Recovery was reporting another false collection in which the original creditor was The Depot ("Depot") to Experian, Trans Union, and Equifax. The Depot collection account also stemmed from a fraudulent apartment lease.

35.    Plaintiff's credit reports showed that Rent Recovery reported the false Arbors account to Equifax, Experian and Trans Union under account number 72722**** as a derogatory account opened by Plaintiff that was in collections for $4270.00.

36.    Plaintiff's credit reports showed that Rent Recovery reported the false Depot account to Equifax, Experian and Trans Union under account number 421**** as a derogatory account opened by Plaintiff that was in collections for $6340.00.

37.    On April 11, 2023, Plaintiff sent another round of dispute letters, via certified mail, to Experian, Experian and Trans Union stating that the Arbors and Depot collection accounts were the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police report with the dispute letters. USPS tracking shows Equifax and Trans Union received their dispute letters on April 21, 2023, and Experian received its dispute letter on April 14, 2023.

38.    Upon information and belief, Experian and Equifax forwarded Plaintiff's April 2023 certified dispute letters regarding the false Arbors and Depot collection accounts to Rent Recovery for investigation.

39.    Plaintiff received a response from Trans Union on May 24, 2023 stating that it deleted the false Depot collection account tradeline from Plaintiff's Trans Union credit report.

40.     Plaintiff did not receive a response to her April 2023 dispute letters from Experian or Equifax.

41.     On June 13, 2023, Plaintiff accessed her Equifax and Experian credit reports and discovered that Equifax and Experian removed the false Arbors and Depot collection account tradelines from her credit reports.

42.     Plaintiff believed that Rent Recovery had finally stopped reporting false and fraudulent accounts to her credit reports. However, to Plaintiff's dismay, when she accessed her Experian, Equifax, and Trans Union credit reports on June 13, 2023, she discovered Rent Recovery had reported another false collection account that did not belong to her. This collection account stemmed from a fraudulent apartment lease in which the original creditor was The Jaxon Apartments ("Jaxon").

43.     Plaintiff's credit reports showed that Rent Recovery reported the false Jaxon account to Equifax, Experian and Trans Union under account number 731**** as a derogatory account opened by Plaintiff that was in collections for $4284.00.

44.     Plaintiff filed a report regarding the fraudulent Jaxon account with the Granbury Police Department.

45.     On June 13, 2023, Plaintiff sent a dispute letter, via certified mail, to Trans Union, Experian and Equifax stating that the Jaxon collection account was the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with this dispute letters. USPS tracking shows Trans Union received its dispute letter on June 21, 2023, Experian received its dispute letter on June 20, 2023, and Equifax received its dispute letter on June 22, 2023.

46.     Upon information and belief, Equifax, Experian, and Trans Union forwarded Plaintiff's June 2023 certified dispute letters regarding the false Jaxon collection account to Rent Recovery for investigation.

47.     Plaintiff did not receive a response to her June 2023 dispute letters from Experian, Equifax or Trans Union.

48.     On August 15, 2023, Plaintiff accessed her credit reports and found that Rent Recovery was still reporting the false Jaxon collection account to Plaintiff's Experian, Equifax and Trans Union credit reports.

49.     On January 28, 2024, Plaintiff accessed her credit reports and found that Rent Recovery was still reporting the false Jaxon collection account to Plaintiff's Experian, Equifax and Trans Union credit reports.

50.     On February 21, 2024, Plaintiff sent another round of dispute letters, via certified mail, to Trans Union, Experian, and Equifax stating that the Jaxon collection account was the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters. USPS tracking shows Trans Union and Experian received their dispute letters on February 26, 2024, and Equifax received its dispute letter on March 1, 2024.

51.     Upon information and belief, Experian and Trans Union forwarded Plaintiff's February 2024 certified dispute letters regarding the false Jaxon collection account to Rent Recovery for investigation.

52.     Plaintiff did not receive a response to her February 2024 dispute letters from Experian, Equifax or Trans Union.

53.    On March 8, 2024, Plaintiff accessed her credit reports and found that Rent Recovery was still reporting the false Jaxon collection to Plaintiff's Equifax credit report. Plaintiff also discovered that Trans Union and Equifax had removed the false Jaxon collection tradeline from her credit reports.

54.    On August 19, 2024, Plaintiff accessed her Equifax credit report and discovered that Equifax had removed the false Jaxon collection account tradeline from her credit report.

55.    Prior to reporting the false Arbors, Depot and Jaxon collection accounts to the credit reporting agencies, Rent Recovery failed to notify Plaintiff of the possible reporting under Regulation F. 12 CRF part 1006.

56.    Rent Recovery "parked" the adverse information on Plaintiff's credit reports, without providing advanced notice, in an attempt to collect on the false Arbors, Depot and Jaxon collection accounts in which Plaintiff did not owe.

57.    The fraudulent debts that Rent Recovery attempted to collect from Plaintiff are consumer debts as they related to apartments at Arbors, Depot, and Jaxon.

58.    Rent Recovery misrepresented the character, extent, and amount of the debts from Plaintiff as collectible, when in fact it was the product of identity theft and therefore not collectible from Plaintiff.

**C.    Facts related to National Credit Audit Corporation.**

59.    Credit Audit is a third-party debt collector that furnishes information to Equifax, Experian, and Trans Union to collect third-party debts.

60.    On March 31, 2023, Plaintiff discovered another collections account on her credit reports that did not belong to her. Credit Audit was reporting a false collection in which the original

creditor was Alexan Las Colinas Apartments ("Alexan") to Trans Union, Experian and Equifax. The collection stemmed from a fraudulent apartment lease.

61.    Plaintiff's credit reports showed that Credit Audit reported the false Alexan account to Equifax, Experian and Trans Union under account number D4603**** as a derogatory account opened by Plaintiff that was in collections for $7073.00.

62.    On April 11, 2023, Plaintiff sent dispute letters, via certified mail, to Experian, Trans Union and Equifax stating that the Alexan collection account was the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters. USPS tracking shows Experian received its dispute letter on April 14, 2023, Trans Union received its dispute letter on April 28, 2023, and Equifax received the dispute letter on April 21, 2023.

63.    Upon information and belief, Experian, Equifax and Trans Union forwarded Plaintiff's April 2023 certified dispute letters regarding the false Alexan collection account to Credit Audit for investigation.

64.    Plaintiff received a response from Trans Union on May 24, 2023 stating that the Alexan account had been verified as accurate by Credit Audit.

65.    Plaintiff did not receive a response to her April 2023 dispute letters from Experian or Equifax.

66.    On June 13, 2023, Plaintiff accessed her credit reports and found that Credit Audit was still reporting the false Alexan collection to Plaintiff's Experian, Equifax and Trans Union credit reports.

67.    On June 13, 2023, Plaintiff sent another round of dispute letters, via certified mail, to Equifax, Trans Union and Experian stating that the Alexan collection account was the result of

her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters. USPS tracking shows Equifax received its dispute letter on June 22, 2023, Experian received its dispute letter on June 20, 2023, and Trans Union received its dispute letter on June 21, 2023.

68.    Upon information and belief, Experian, Equifax and Trans Union forwarded Plaintiff's June 2023 certified dispute letters regarding the false Alexan collection account to Credit Audit for investigation.

69.    Plaintiff did not receive a response to her June 2023 certified letters from Experian, Equifax or Trans Union.

70.    On August 15, 2023, Plaintiff accessed her credit reports and discovered that Experian and Equifax had removed the false Alexan collections account tradeline from her credit reports. However, Credit Audit was still reporting the false Alexan collection account tradeline on Plaintiff's Trans Union credit report.

71.    On January 28, 2024, Plaintiff accessed her credit reports and discovered that Credit Audit was still reporting the false Alexan collection account to Trans Union. In addition, Plaintiff discovered that the false Alexan collection account had reappeared on her Equifax credit report. Credit Audit had again reported the false Alexan collection account to Equifax on December 1, 2023 -after Equifax had removed the false tradeline.

72.    On February 21, 2024, Plaintiff sent another round of dispute letters, via certified mail, to Trans Union and Equifax stating that the Alexan collection account was the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters. USPS tracking shows Trans

Union received its dispute letter on February 26, 2024, and Equifax received its dispute letter on March 1, 2024.

73.    Upon information and belief, Equifax and Trans Union forwarded Plaintiff's February 2024 certified dispute letters regarding the false Alexan collection account to Credit Audit for investigation.

74.    On March 11, 2024, Plaintiff received a response to her March 2024 dispute letter from Trans Union. The response included investigation results that stated the Alexan collection account had been reinserted into Plaintiff's credit report due to the account being verified by Credit Audit.

75.    Plaintiff did not receive a response to her March 2024 certified letter from Experian or Equifax.

76.    On March 8, 2024, Plaintiff accessed her credit reports and discovered that Trans Union had removed the false Alexan tradeline from her credit report. However, Credit Audit was still reporting the false Alexan collection account tradeline on Plaintiff's Equifax credit report.

77.    On August 19, 2024, Plaintiff accessed her credit reports and discovered that Equifax had removed the false Alexan tradeline from her credit reports.

78.    Prior to reporting the false Alexan collections account to the credit reporting agencies, Credit Audit failed to notify Plaintiff of the possible reporting under Regulation F. 12 CRF part 1006.

79.    Credit Audit Rent "parked" the adverse information on Plaintiff's credit reports, without providing advanced notice, in an attempt to collect on the false Alexan collection account in which Plaintiff did not owe.

80.     The fraudulent debt that Credit Audit attempted to collect from Plaintiff is a consumer debt as it related to an apartment at Alexan.

81.     Credit Audit misrepresented the character, extent, and amount of the debts from Plaintiff as collectible, when in fact it was the product of identity theft and therefore not collectible from Plaintiff.

**D.    Facts related to ProCollect, Inc**.

82.     ProCollect is a third-party debt collector that furnishes information to Equifax, Experian, and Trans Union to collect third-party debts.

83.     On March 31, 2023, Plaintiff discovered three collection accounts on her credit reports that did not belong to her. ProCollect was reporting false collection accounts in which the original creditors were the Mark at Denton Apartments ("Denton"), Parkside SO7 Apartments ("Parkside"), and the Union at River East Apartments ("River East") to Trans Union, Experian and Equifax. All three collections stemmed from fraudulent apartment leases.

84.     Plaintiff's credit reports showed that ProCollect reported the false Denton account to Equifax, Experian and Trans Union under account number 43104001261**** as a derogatory account opened by Plaintiff that was in collections for $6445.00.

85.     Plaintiff's credit reports showed that ProCollect reported the false Parkside account to Equifax, Experian and Trans Union under account number 42053001263**** as a derogatory account opened by Plaintiff that was in collections for $5909.00.

86.     Plaintiff's credit reports showed that ProCollect reported the false River East account to Equifax, Experian and Trans Union under account number 14709001260**** as a derogatory account opened by Plaintiff that was in collections for $3943.00.

87.    Plaintiff filed a report regarding the fraudulent Parkside, Denton and River East collection accounts with the Granbury Police Department.

88.    On April 11, 2023, Plaintiff sent dispute letters, via certified mail, to Equifax, Trans Union and Experian stating that the Denton, River East and Parkside collection accounts were the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters. USPS tracking shows Equifax received its dispute letter on April 21, 2023, Trans Union received its dispute letter on April 28, 2023, and Experian received its dispute letter on April 14, 2023.

89.    Upon information and belief, Experian, Equifax and Trans Union forwarded Plaintiff's April 2023 certified dispute letters regarding the false Parkside, Denton and River East collection accounts to ProCollect for investigation.

90.    On May 24, 2023, 2024 Plaintiff received a response to her April 2023 dispute letter from Trans Union. The response included investigation results that stated the Parkside, Denton and River East accounts had all been verified as accurate by ProCollect.

91.    Plaintiff did not receive a response to her April 2023 dispute letters from Experian or Equifax.

92.    On June 13, 2023, Plaintiff accessed her credit reports again and found that Equifax had removed the Denton and River East false collection accounts from her credit report; however, ProCollect was still reporting the false Parkside account to Equifax. In addition, Plaintiff found that ProCollect was still reporting the false River East, Denton and Parkside accounts to her Trans Union and Experian credit reports.

93.    On June 13, 2023, Plaintiff sent another round of dispute letters, via certified mail, to Experian, Equifax and Trans Union stating that the Denton, River East and Parkside collection

accounts were the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters. USPS tracking shows Experian received its dispute letter on June 20, 2023. Trans Union received its dispute letter on June 21, 2023, and Equifax received its dispute letter on June 22, 2023.

94.     Upon information and belief, Experian, Equifax and Trans Union forwarded Plaintiff's June 2023 certified dispute letters regarding the false Parkside, Denton and River East collection accounts to ProCollect for investigation.

95.     Plaintiff did not receive a response to her June 2023 certified dispute letters from Experian, Trans Union or Equifax.

96.     On August 15, 2023, Plaintiff accessed her credit reports again and found that Equifax had removed the Parkside false collection account tradelines from her Equifax credit report. In addition, Plaintiff found that Experian and Trans Union had removed the false Parkside, Denton, and River East accounts from her credit reports.

97.     Plaintiff believed that ProCollect had stopped reporting false and fraudulent collection accounts to her credit reports. However, Plaintiff accessed her credit reports on January 28, 2024, and discovered that ProCollect was again reporting the false Denton collections account to her Equifax credit report, much to Plaintiff's dismay.

98.     On February 21, 2024, Plaintiff sent another dispute letter, via certified mail, to Equifax stating that the Denton collections account were the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with this dispute letter to Equifax. USPS tracking shows Equifax received the dispute letter on March 1, 2024.

99.    Upon information and belief, Equifax forwarded Plaintiff's February 2024 certified dispute letter regarding the false Denton collection account to ProCollect for investigation.

100.    Plaintiff did not receive a response to her February 2024 dispute letter from Equifax.

101.    On August 19, 2024, Plaintiff accessed her credit reports and found that Equifax had removed the false Denton collections account from her Equifax credit report.

102.    Prior to reporting the false Denton, Parkside and River East account to the credit reporting agencies, ProCollect failed to notify Plaintiff of the possible reporting under Regulation F. 12 CRF part 1006.

103.    ProCollect "parked" the adverse information on Plaintiff's credit reports, without providing advanced notice, in an attempt to collect on the false Denton, Parkside, and River East collection accounts in which Plaintiff did not owe.

104.    The fraudulent debts that ProCollect attempted to collect from Plaintiff are consumer debts as they related to apartments at Denton, Parkside, and River East.

105.    ProCollect misrepresented the character, extent, and amount of the debts from Plaintiff as collectible, when in fact it was the product of identity theft and therefore not collectible from Plaintiff.

**E.    Facts related to Columbia Debt Recovery LLC d/b/a Genesis Credit**

106.    Columbia is a third-party debt collector that furnishes information to Equifax, Experian and Trans Union to collect third-party debts.

107.    On March 31, 2023, Plaintiff discovered a collection account on her credit reports that did not belong to her. Columbia was reporting a false collection account in which the original

creditor was Current at the Grid Apartments ("Grid") to Trans Union, Experian and Equifax. The collection account stemmed from a fraudulent apartment lease.

108.    Plaintiff's credit reports showed that Columbia reported the false Grid account to Equifax, Experian and Trans Union under account number S0GS1745000**** as a derogatory account opened by Plaintiff that was in collections for $336.00.

109.    On April 11, 2023, Plaintiff sent dispute letters, via certified mail, to Equifax, Experian and Trans Union stating that the Grid collection account was the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters. USPS tracking shows Equifax received its dispute letter on April 21, 2023, Experian received its dispute letter on April 14, 2023, and Trans Union received its dispute letter on April 28, 2023.

110.    Upon information and belief, Equifax, Experian and Trans Union forwarded Plaintiff's April 2023 certified dispute letters regarding the false Grid collections account to Columbia for investigation.

111.    On May 24, 2023, 2024 Plaintiff received a response to her April 2023 dispute letter from Trans Union. The response included investigation results that stated the Grid account had been verified as accurate by Columbia.

112.    Plaintiff did not receive a response to her April 2023 dispute letters from Equifax or Experian.

113.    On June 13, 2023, Plaintiff accessed her credit reports and found that Equifax had removed the false Grid collection account tradeline from her Equifax credit report. However, Columbia was still reporting the false Grid collections account to her Trans Union and Experian credit reports. In addition, Columbia was reporting another false collection account in which the

original creditor was 4000 Hulen Urban Apartments ("Hulen") to Trans Union and Experian. The collection account stemmed from another fraudulent apartment lease.

114.    Plaintiff's credit reports showed that Columbia reported the false Hulen account to Experian and Trans Union under account number OGMRR001001**** as a derogatory account opened by Plaintiff that was in collections for $7460.00.

115.    On June 13, 2023, Plaintiff sent a dispute letter, via certified mail, to Trans Union and Experian stating that the Hulen and Grid collection accounts were the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters. USPS tracking shows Trans Union received the dispute letter on June 21, 2023, and Experian received the dispute letter on June 20, 2023.

116.    Upon information and belief, Experian and Trans Union forwarded Plaintiff's June 2023 certified dispute letters regarding the false Hulen and Grid collection accounts to Columbia for investigation.

117.    Plaintiff did not receive a response to her June 2023 dispute letters from Trans Union or Experian.

118.    On August 15, 2023, Plaintiff accessed her credit reports and found that Experian and Trans Union had removed the false Grid and Hulen collection account tradelines from her credit reports.

119.    Plaintiff believed that Columbia had finally stopped reporting false tradelines to her credit reports. However, when the Plaintiff accessed her credit reports on January 28, 2024, she discovered Columbia was now reporting five more fraudulent accounts to her Trans Union, Experian, and Equifax credit reports in which the original creditors were Rivervue Apartments ("Rivervue"), Scenic at River East Apartments ("Scenic"), Avana River Park Apartments

("Avana"), The Oakley Apartments ("Oakley"), and Burnett Lofts ("Burnett"). All these collection accounts stemmed from fraudulent apartment leases.

120.    Plaintiff's credit reports showed that Columbia reported the false Rivervue account to Equifax, Experian and Trans Union under account number S0G24**** as a derogatory account opened by Plaintiff that was in collections for $185.00.

121.    Plaintiff's credit reports showed that Columbia reported the false Scenic account to Equifax, Experian and Trans Union under account number S0G24**** as a derogatory account opened by Plaintiff that was in collections for $320.00.

122.    Plaintiff's credit reports showed that Columbia reported the false Avana account to Equifax, Experian and Trans Union under account number S0GS**** as a derogatory account opened by Plaintiff that was in collections for $185.00.

123.    Plaintiff's credit reports showed that Columbia reported the false Oakley account to Equifax, Experian and Trans Union under account number S0G24**** as a derogatory account opened by Plaintiff that was in collections for $225.00.

124.    Plaintiff's credit reports showed that Columbia reported the false Burnett account to Equifax, Experian and Trans Union under account number S0G24**** as a derogatory account opened by Plaintiff that was in collections for $375.00.

125.    On February 21, 2024, Plaintiff sent dispute letters, via certified mail, to Equifax, Experian and Trans Union stating that the Scenic, Oakley, Rivervue, Burnett and Avana fraudulent collection accounts were the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters. USPS tracking shows Experian and Trans Union received their dispute letters on February 26, 2024, and Equifax received its dispute letter on March 1, 2024.

126.    Upon information and belief, Experian, Equifax and Trans Union forwarded Plaintiff's June 2023 certified dispute letters regarding the false Scenic, Oakley, Rivervue, Avana and Burnett collection accounts to Columbia for investigation.

127.    Plaintiff did not receive a response to her February 2024 dispute letters from Trans Union, Equifax or Experian.

128.    On March 8, 2024, Plaintiff accessed her credit reports and found that Experian and Trans Union removed the false Scenic, Oakley, Rivervue, Avana and Burnett collection account tradelines from her credit reports. However, Columbia was still reporting the false Scenic, Oakley, Rivervue, Avana and Burnett collection accounts to her Equifax credit report.

129.    On August 19, 2024, Plaintiff accessed her credit reports and found that Equifax removed the false Scenic, Oakley, Rivervue, Avana and Burnett collection account tradelines from her credit reports.

130.    Prior to reporting the false Scenic, Hulen, Oakley, Rivervue, Avana, Burnett and Grid collection accounts to the credit reporting agencies, Columbia failed to notify Plaintiff of the possible reporting under Regulation F. 12 CRF part 1006.

131.    Columbia "parked" the adverse information on Plaintiff's credit reports, without providing advanced notice, in an attempt to collect on the false Scenic, Hulen, Oakley, Rivervue, Avana, Burnett and Grid collection accounts in which Plaintiff did not owe.

132.    The fraudulent debts that Columbia attempted to collect from Plaintiff are consumer debts as they related to apartments at Scenic, Hulen, Oakley, Rivervue, Avana, Burnett and Grid.

133.    Columbia misrepresented the character, extent, and amount of the debts from Plaintiff as collectible, when in fact it was the product of identity theft and therefore not collectible from Plaintiff.

**F.      Facts related to IQ Data International Inc**.

134.    IQ Data is a third-party debt collector that furnishes information to Equifax, Experian, and Trans Union to collect third-party debts.

135.    On December 20, 2022, Plaintiff discovered a collection account on her credit reports that did not belong to her. IQ Data was reporting a false collection account in which the original creditor was Park Creek Apartments ("Park Creek") to Trans Union, Experian and Equifax. The collection account stemmed from a fraudulent apartment lease.

136.    Plaintiff's credit reports showed that IQ Data reported the false Park Creek account to Equifax, Experian and Trans Union under account number IQD0PNE959881**** as a derogatory account opened by Plaintiff that was in collections for $300.00.

137.    Plaintiff filed a report regarding the fraudulent Park Creek collections account with the Granbury Police Department.

138.    On March 31, 2023, Plaintiff accessed her credit reports and found that IQ Data was still reporting the false Park Creek collection accounts to her Equifax, Experian and Trans Union credit reports.

139.    On April 11, 2023, Plaintiff sent dispute letters, via certified mail, to Equifax, Trans Union and Experian stating that the fraudulent Park Creek collection account was the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City and Granbury Police reports with this dispute letters. USPS tracking shows Equifax received its dispute letter on April 21, 2023, Trans Union received its dispute letter on April 28, 2023, and Experian received its dispute letter on April 14, 2023.

140.    Upon information and belief, Equifax, Experian and Trans Union forwarded April 2023 certified dispute letters regarding the false Park Creek collections account to IQ Data for investigation.

141.    Plaintiff received a response from Trans Union on May 24, 2023, stating that the Park Creek account had been verified as accurate by IQ Data.

142.    Plaintiff did not receive a response to her April 2023 certified dispute letters from Equifax or Experian.

143.    On June 13, 2023, Plaintiff accessed her credit reports again and found that IQ Data was still reporting the false Park Creek collection accounts to her Equifax, Experian and Trans Union credit reports.

144.    On June 13, 2023, Plaintiff sent another round of dispute letters, via certified mail, to Equifax, Trans Union and Experian stating that the fraudulent Park Creek collection account was the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City and Granbury Police reports with this dispute letters. USPS tracking shows Equifax received its dispute letter on June 22, 2023, Trans Union received its dispute letter on June 21, 2023, and Experian received its dispute letter on June 21, 2023.

145.    Upon information and belief, Equifax, Experian and Trans Union forwarded the June 2023 certified dispute letters regarding the false Park Creek collections account to IQ Data for investigation.

146.    Plaintiff did not receive a response to her June 2023 certified dispute letters from Equifax, Trans Union or Experian.

147.    On August 15, 2023, Plaintiff accessed her credit reports and discovered that Equifax, Experian and Trans Union had removed the false Park Creek collection account tradeline from Plaintiff's credit reports.

148.    Prior to reporting the false Park Creek collections account to the credit reporting agencies, IQ Data failed to notify Plaintiff of the possible reporting under Regulation F. 12 CRF part 1006.

149.    IQ Data "parked" the adverse information on Plaintiff's credit reports, without providing advanced notice, in an attempt to collect on the false Park Creek collection account on which Plaintiff did not owe.

150.    The fraudulent debt that IQ Data attempted to collect from Plaintiff is a consumer debt as it related to an apartment at Park Creek.

151.    IQ Data misrepresented the character, extent, and amount of the debt from Plaintiff as collectible, when in fact it was the product of identity theft and therefore not collectible from Plaintiff.

**G.    Defendants' actions have damaged Plaintiff**

152.    The Defendants' actions have damaged Plaintiff financially. In addition, Defendants' actions have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, frustration, anxiety, emotional distress and interference with usual activities. Plaintiff has also experienced feelings of helplessness, loss of financial control and independence, fear of monetary loss or loss of property, as well as other harmful and negative emotions. Plaintiff has also suffered reputational harm.

153.    As a direct result of the Defendants' derogatory reporting of the aforementioned false collection accounts, Plaintiff was twice denied a home loan after years of saving and advancing in her career.

154.    Defendants failed to investigate and/or maintain procedures reasonably adapted to avoid collection and reporting of false debts that stemmed from services and apartment leases that Plaintiff never applied for or authorized.

155.    Defendants' actions have also violated Plaintiff's privacy as they have published these errors to third parties.

156.    Plaintiff has suffered damages proximately caused by the conduct of one or more of the Defendants, including:

    a.  Emotional distress, damage to reputation, humiliation, guilt, stress, anxiety, frustration, mental pain, anguish, distress, and loss of focus and production;

    b.  Time and expense of pulling/reviewing credit reports and meeting with professionals about how to best proceed;

    c.  Believing that the erroneous accounts may continue to be reported inaccurately and misleadingly through no fault of Plaintiff's and have a chilling effect on ability to obtain credit;

    d.  Adverse information on credit reports and a negative impact to credit rating;

    e.  An inability to improve credit scores during the dispute process;

    f.  An inability to qualify for financing;

    g.  Invasion of privacy;

    h.  A lower credit score; and

    i.  Having to hire attorneys to combat the improper credit reporting, and also defend the Harris County lawsuit

### TYPES OF RELIEF UNDER THE FDCPA & TDCA

157.    Under the FDCPA, 15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for

up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

158.    Under the TDCA, "[a] person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter; and (2) actual damages sustained as a result of a violation of this chapter." Tex. Fin. Code Ann. § 392.403(a)(1)-(2).

## INJUNCTIVE RELIEF UNDER THE TDCA

159.    Plaintiff seeks to "prevent or restrain" Defendants from all attempts to collect from her unless or until there has been any final adjudication as per Tex. Lab. Code. Ann. § 413.042(a).

160.    A suit under the TDCA may be maintained merely for injunctive relief, without alleging or proving actual damages. *See Marauder Corp. v. Beall*, 301 S.W.3d 817 (Tex. App. - Dallas 2009, reh'g denied) (A TDCA action "may be for actual damages *or* an injunction").

### COUNT I – Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data FCRA -Failure to investigate

161.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

162.    Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A), after Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data receive notice of a "dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, [they] shall conduct an investigation with respect to the disputed information."

163.    Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A), after Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data receive notice of a "dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, [they] shall review all relevant information provided by the consumer reporting agency…"

164.    Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data an opportunity to review Plaintiff's dispute letters and conduct a reasonable investigation.

165.    Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data failed to fully and properly investigate Plaintiff's disputes relating to fraudulent collections that stemmed from identity theft.

166.    Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data failed to review all relevant information provided by Equifax, Experian, or Trans Union relating to Plaintiff's many disputes.

167.    Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data's conduct, actions, and inactions were willful, or, in the alternative, negligent.

168.    Plaintiff suffered embarrassment, humiliation, and emotional distress because of Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data's failure to fully and properly investigate Plaintiff's disputes.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in Plaintiff's favor and against Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data, awarding the following relief:

      a.  Appropriate statutory penalties for each violation of the FCRA;
      b.  Actual damages;
      c.  Punitive damages;
      d.  Reasonable attorney's fees and the costs of this litigation;
      e.  Pre-judgment and post-judgment interest at the legal rate;
      f.  Appropriate equitable relief, including the correction of Plaintiff's credit reports; and
      g.  Such other relief as the Court deems equitable, just, and proper.

**COUNT II – Defendants Rent Recovery, Credit Audit, ProCollect, and Columbia
Violations of the FDCPA**

169.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

170.    Section 1692e(2)(A) prohibits a debt collector from using ""any false, deceptive, or misleading representation or means in connection with the collection of any debt," which also

includes the false representation of "**the character, amount, or legal status of any debt**." (emphasis added).

171.    The foregoing acts and omissions of Defendants Rent Recovery, Credit Audit, ProCollect, and Columbia constitute violations of the FDCPA including but not limited to violation of 15 U.S.C. §1692e and §1692f by publishing false credit information about Plaintiff to the credit reporting agencies; misrepresenting the amount, status, and character of Plaintiff's alleged collections in the credit information provided to the credit reporting agencies, and attempting to collect a debt from Plaintiff that she does not owe.

172.    Defendants Rent Recovery, Credit Audit, ProCollect, and Columbia violated Section 1692e(2)(A) by attempting to collect a debt from Plaintiff which, by law, she did not owe because it was the product of identity theft.

173.    The Fifth Circuit has ruled that the issue of "Whether a debt is legally enforceable is a central fact about the character and legal status of that debt. A misrepresentation about that fact thus violates the FDCPA." *Manuel*, 956 F.3d at 829; *Daugherty*, 836 F.3d at 511-12. "Debt collectors may not make false claims, period." <u>*Randolph v. IMBS Inc.*, 368 F.3d 726, 730 (7th Cir. 2004)</u>.

174.    As a result of Defendants' violations of the FDCPA, Plaintiff is entitled from Defendants Rent Recovery, Credit Audit, ProCollect, and Columbia: actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against Defendants Rent Recovery, Credit Audit, ProCollect, and Columbia, awarding the following relief:

a.    Statutory damages of an amount not to exceed $1,000 dollars total, for all violations, under 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages under 15 U.S.C. § 1692k(a)(1);

c.      Reasonable attorney's fees and costs of the action under 15 U.S.C. § 1692k(a)(3); and

d.      Such other or further relief as the Court deems just proper.

**COUNT III – Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data**
**TEXAS DEBT COLLECTION ACT**
**Violation of Tex. Fin. Code Ann. §§ 392.304(a)(8) & 392.304(a)(19)**

175.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

176.    A debt collector may not use any fraudulent, deceptive, or misleading representation that "misrepresent[s] the character, extent, or amount of a consumer debt…." *See* TEX. FIN. CODE § 392.304(a)(8).

177.    A debt collector may not use "any other false representation or deceptive means to collect a debt…." *See* TEX. FIN. CODE § 392.304(a)(19).

178.    For the same reasons that the Defendants Rent Recovery, Credit Audit, ProCollect, and Columbia are liable under §§ 1692e, 1692e(2)(A) of the FDCPA in Count II above, Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data are also liable under §§ 392.304(a)(8) & 392.304(a)(19) of the Texas Finance Code.

179.    Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data are all liable under §§ 392.304(a)(8) for misrepresenting the character, extent, and amount of the debt as collectible, when in fact it was the product of identity theft. Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data further made false representations or deceptive means to collect the debt from Plaintiff and are thus liable under §§ 392.304(a)(8) & 392.304(a)(19).

180.    Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data attempted to collect a consumer debt from Plaintiff that she did not owe.

181.    "A person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter; and (2) actual damages sustained as a result of a violation of this chapter." *See* TEX. FIN. CODE § 392.403(a)(1)-(2). "A person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs." *See* TEX. FIN. CODE § 392.403(b). Tex. Fin. Code Ann. § 392.102 authorizes a plaintiff to sue both the third-party collectors (Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data).

182.    The Defendants have reported to the credit reporting agencies that Plaintiff, an identity theft victim, is responsible for the repayment of debts related to apartment leases for units she never lived in and services she did not receive, as part of their debt collection activities. Plaintiff prays for injunctive relief to stop all future such activities.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in Plaintiff's favor and against Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data, awarding the following relief:

a.    Injunctive relief to prevent or restrain any violations of the TDCA as provided TEX. FIN. CODE § 392.403(a)(1);
b.    Actual damages under TEX. FIN. CODE § 392.403(a)(2);
c.    Reasonable attorney's fees, litigation expenses and costs of suit under TEX. FIN. CODE § 392.403(b);
d.    Exemplary damages; and
e.    Such other or further relief as the Court deems just proper.


### JURY

**Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.**

Dated: January 8, 2025                    Respectfully submitted,


                                    By:   /s/ *James M. Smith*
                                          _____

                                          James M. Smith (6285183)
                                          Doherty Smith, LLC
                                          7000 W. 127th Street
                                          Palos Heights, IL 60462
                                          Phone: 312-319-2879
                                          Fax: 312-319-4084
                                          JSmith@dohertysmith.com

                                          Tod A. Lewis (Texas Bar #24091999)
                                          Tod Lewis Law, PLLC
                                          5900 Balcones Drive #17239
                                          Austin, TX 78731
                                          512-739-0390 (cell)
                                          1-737-205-1291 (facsimile)
                                          Tod@texasfaircredit.com

                                          *Attorneys for Plaintiff*

## VERIFICATION

Plaintiff Brittany Perroux declares as follows:

1.    I am the Plaintiff in this Verified Complaint.

2.    I reside in Texas.

3.    I have personal knowledge of myself and my activities, including those set forth in this Verified Complaint. If called to testify, I could and would testify competently and truthfully as to the matters stated in this Verified Complaint.

4.    I verify and affirm under penalty of perjury under the laws of the United States of America and the State of Texas that the factual averments in this Verified Complaint concerning myself and my activities are true and correct pursuant to 28 U.S.C. § 1746.

Executed on:_____1/8/2025_____

*Brittany Perroux*
ID rFKKLWtTdV5CTFb1EzxcveKi
_____
/s/ Brittany Perroux, Plaintiff