**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| Brittany Perroux,<br>                                   Plaintiff,<br>v.<br><br>Rent Recovery Solutions, LLC,<br>                                   Defendant. | Case No. 1:25-cv-00045-RP |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, *AND JURY DEMAND***

**PRELIMINARY STATEMENT**

1.      Twenty-three million people are victims of identity theft each year. [FN1 Omitted].  Plaintiff is a victim of identity theft.

**NCAC'S RESPONSE:**      NCAC admits only that Plaintiff sent it a Johnson City Police Department report dated May 31, 2022, in which Plaintiff stated that she "believed she was a victim of identity theft," together with a Granbury Police Department report dated March 20, 2023 in which Plaintiff stated that "someone has been using her identity to rent apartments in the metroplex area."  NCAC lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

2.      In 2022, Plaintiff first learned that her identity was stolen. Someone fraudulently used Plaintiff's identity to lease an apartment in 2020. Plaintiff did not learn about the stolen identity until a collection showed up on her credit reports. Plaintiff quickly filed a police report and worked hard to remove the fraudulent collection. But as Plaintiff worked to remove that fraudulent collection from her account additional fraudulent accounts showed up on her credit reports. Plaintiff would not learn of the fraudulent activity until an account was reported to the credit reporting agencies: Trans

Union LLC ("Trans Union"), Experian Information Solutions ("Experian"), and Equifax Information Services ("Equifax"). Plaintiff froze her credit reports. But, still, fraudulent accounts would appear on her credit reports as Plaintiff's credit was inappropriately pulled long before the credit freeze was put in place. In all, at least 30 fraudulent accounts appeared on Plaintiff's credit reports in addition to false names and false addresses. Through Plaintiff's hard work and perseverance, many of the accounts are gone, but not all of them. These fraudulent accounts are causing damage to Plaintiff.

**NCAC'S RESPONSE:**       NCAC admits only that Plaintiff sent it a Johnson City Police Department report dated May 31, 2022, in which Plaintiff stated that she "believed she was a victim of identity theft," together with a Granbury Police Department report dated March 20, 2023 in which Plaintiff stated that "someone has been using her identity to rent apartments in the metroplex area."   NCAC lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

3.       Plaintiff previously filed a lawsuit in this venue to combat prior erroneous tradelines due to identity theft against the three major credit reporting agencies: Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc.("Experian") and Trans Union, LLC ("Trans Union"); those defendants are not named in this case. *See Perroux v. Equifax Information Services LLC*, No. 1-24-CV-00107-JRN, 2024 U.S. Dist. LEXIS 177964, at *1 (W.D. Tex. Sep. 29, 2024). Plaintiff has resolved these claims with all of the named defendant credit reporting agencies through various individual settlement agreements.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

4.    The Defendants named in this action failed to perform reasonable investigations or take their role in the damages caused to Plaintiff seriously making this litigation necessary.

**NCAC'S RESPONSE:**    NCAC denies the allegations against it and lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

5.    Defendants continue to report false information to the credit reporting agencies and/or are attempting to collect debts not owed by Plaintiff. The filing of this lawsuit is Plaintiff's only remaining alternative to get her credit back to the way it should be.

**NCAC'S RESPONSE:**    NCAC denies the allegations against it and lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

6.    Defendants have failed in their grave responsibilities of fairness, impartiality, and a respect for Plaintiff's right of privacy, which failures are causing damage to Plaintiff.

**NCAC'S RESPONSE:**    NCAC denies the allegations against it and lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

7.      Consequently, Plaintiff brings this action against Defendants for damages resulting from their violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Texas Debt Collection Act, Tex. Fin. Code Ann. § 392. *et seq.*, ("TDCA").

**NCAC'S RESPONSE:**      NCAC denies the allegations against it and lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

8.      "Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681 (a)(1). "Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681 (a)(3).

**NCAC'S RESPONSE:**      NCAC admits only that Plaintiff has quoted portions of the Fair Credit Reporting Act's statutory text.  NCAC denies these allegations to the extent that they are inconsistent with or contrary to the statutory text in its entirety, and its judicial interpretation as a whole.

9.      The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The statute provides for civil liability for a wide range of abusive actions, including, but not limited to, the false representation of the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).  Consequently, the Fifth Circuit has opined that Congress "clearly intended the FDCPA to have a broad remedial scope." *Hamilton v. United Healthcare of La.,*

*Inc.*, 310 F.3d 385, 392 (5th Cir. 2002). The FDCPA "should therefore be construed broadly and in favor of the consumer." *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016). The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Daugherty*, at 511, 512 (citing and quoting 15 U.S.C. § 1692(e); *Manuel v. Merchs. & Prof'l Bureau, Inc.*, 956 F.3d 822, 826 (5th Cir. 2020).

**NCAC'S RESPONSE:**    NCAC admits only that Plaintiff has quoted portions of the Fair Debt Collection Practices Act's statutory text and extracts of certain judicial opinions. NCAC denies these allegations to the extent that they are inconsistent with or contrary to the statutory text in its entirety, and its judicial interpretation as aa whole.

10.    Similarly, the Texas Legislature "passed the [Texas] Debt Collection Act to prevent creditors from preying on a consumer's fears and ignorance of the law to pursue allegedly delinquent debts." *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986).

**NCAC'S RESPONSE:**    NCAC admits only that Plaintiff has quoted portions of a judicial opinion. NCAC denies these allegations to the extent that they are inconsistent with or contrary to the Texas Debt Collection Act's statutory text in its entirety, and its judicial interpretation as a whole.

11.    The TDCA applies to debt collectors, i.e., anyone who collects debts, including creditors. [FN2: Omitted]. The Texas Supreme Court found that a "review of its history indicates that the [Texas] Legislature passed the [Texas] Debt Collection Act to prevent creditors from preying on a consumer's fears and ignorance of the law to pursue allegedly delinquent debts." *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986); *[s]ee*

*also, Dixon v. Brooks*, 604 S.W.2d 330 (Tex. App.—Houston [14th Dist.] July 9, 1980; and

*Monroe v. Frank*, 936 S.W.2d 654, 1996 Tex. App. LEXIS 3756 (Tex. App.—Dallas [5th Dist.]

Aug. 16, 1996); *Lamell v. OneWest Bank, FSB, LP*, 485 S.W.3d 53, 62-63 (Tex. App—Houston

[14th Dist.] Nov. 17, 2015); *Goswick v. Equifax Info. Servs., LLC*, Case No. SA-22-CV-1204-

JKP-ESC, 2023 U.S. Dist. LEXIS 163086 (W.D. Tex. Sept. 14, 2023).

**NCAC'S RESPONSE:** NCAC admits only that Plaintiff has quoted portions

of the TDCA and of certain judicial opinions. NCAC denies these allegations to the extent

that they are inconsistent with or contrary to the Texas Debt Collection Act's statutory

text in its entirety, and its judicial interpretation as a whole.

12. Under the TDCA, the term "debt collector' means a person who directly or

indirectly engages in debt collection..." Tex. Fin. Code Ann. § 392.001(6). "Debt

collection" means "an action, conduct, or practice in collecting, or in soliciting for

collection, consumer debts that are due or alleged to be due a creditor." Id. at § 392.001(5).

And the term "Creditor" means "a party, other than a consumer, to a transaction or

alleged transaction involving one or more consumers." *Id.* at § 392.001(3).

**NCAC'S RESPONSE:** NCAC admits only that Plaintiff has quoted portions

of the TDCA. NCAC denies these allegations to the extent that they are inconsistent with

or contrary to the Texas Debt Collection Act's statutory text in its entirety, and its judicial

interpretation as a whole.

13. Plaintiff seeks to enforce those policies and civil rights which are expressed

through the TDCA and FDCPA. The TDCA and FDCPA encourage consumers to act as

"private attorneys general" to enforce the public policies and protect the civil rights

expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001); *Young v. Asset Acceptance, LLC*, Civil Action, No.:3:09-CV-2477-BH, 2011 WL 618274, *2 (N.D. Tex. 2011). Over one-third of debt collection complaints to the CFPB are about attempts to collect a debt that is not owed as is the case here. Fair Debt Collection Practices Act—CFPB Annual Report 2015 at 13 (2015). [FN3: Omitted].

      **NCAC'S RESPONSE:**    NCAC admits only that Plaintiff has quoted portions of judicial opinions and of an agency report.  NCAC denies these allegations to the extent that they are inconsistent with or contrary to the relevant statutory text in its entirety, and its judicial and agency interpretation as a whole.

## <u>JURISDICTION & VENUE</u>

      14.    Jurisdiction is proper under 28 U.S.C. § 1331, ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), 28 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce...") and 15 U.S.C. § 1692k (FDCPA) (An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, ...") and 15 U.S.C. §1681p (FCRA).

      **NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

      15.    The Court also has supplemental jurisdiction over the TDCA claims under 28 U.S.C. § 1367.

**NCAC'S RESPONSE:**      NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

16.     Venue is proper in this judicial district because Defendants engaged in the complained of acts in this district. 28 U.S.C. § 1391(b) ("A civil action may be brought in— (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ..."). Also, Plaintiff resides in this district and a substantial part of the acts and omissions giving rise to the claims occurred within this judicial district.

**NCAC'S RESPONSE:**      NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

## PARTIES

17.     Plaintiff is a natural person who resided in Travis County, Texas during a substantial part of the events giving rise to her claims.

**NCAC'S RESPONSE:**      NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

18.     Plaintiff is a consumer as defined by the FCRA, 15 U.S.C. §1681a(c): "an individual."

**NCAC'S RESPONSE:**      Admitted, on information and belief.

19.     Plaintiff is also a "consumer" as defined in both the FDCPA and TDCA. See 15 U.S.C. § 1692a(3) and Tex. Fin. Code Ann. §§ 392.001(1) & 392.001(2), respectively.

**NCAC'S RESPONSE:**      Admitted, on information and belief.

20.     Rent Recovery is a limited liability company with its principal place of business located at 1945 The Exchange, Ste. 120, Atlanta, GA 30339. Rent Recovery's registered agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company located at 211 E. 7th Street, Suite 620, Austin, TX 78701-3136. Rent Recovery is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). Rent Recovery is also a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection is the principal purpose of Rent Recovery's business. Rent Recovery is a Texas registered debt collector and is also bonded in Texas through Travelers Casualty and Surety Company of America (File#: 20070186; Bond#: 7752241114TX).

**NCAC'S RESPONSE:**     NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

21.     Credit Audit [NCAC] [NCAC] is a corporation with its principal place of business located at 14770 Coit Road, Suite 1000 Dallas, TX 75251. Credit Audit [NCAC] [NCAC]'s registered agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company located at 211 E. 7th Street, Suite 620, Austin, TX 78701-4234. Credit Audit [NCAC] [NCAC] is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). Credit Audit [NCAC] [NCAC] is also a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection is the principal purpose of Credit Audit [NCAC] [NCAC]'s business. Credit Audit [NCAC] [NCAC] is a Texas registered

debt collector and is also bonded in Texas through United States Fire Insurance Company (File#: 20180070; Bond#: 612401695).

**NCAC'S RESPONSE:**    Denied. By way of further response, NCAC ceased operations effective December 31, 2024.

22.    ProCollect is a corporation with its principal place of business located at 12170 Abrams Road 100, Dallas, TX 75243. ProCollect's registered agent is John W. Bowdich located at 8150 N. Central Expy Suite 500, Dallas, TX 75206 USA. ProCollect is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). ProCollect is also a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection is the principal purpose of ProCollect's business. ProCollect is a Texas registered debt collector and is also bonded in Texas through Western Surety Company (File#: 20050228; Bond#: 69813436).

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

23.    Columbia is a limited liability company with its principal place of business located at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208. Columbia's registered agent is Illinois Corporation Service Company 211 E. 7th Street, Suite 620 Austin, TX 78701. Columbia is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). Columbia is also a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection is the principal purpose of Columbia's business. Columbia is a Texas registered

debt collector and is also bonded in Texas through United States Fire Insurance Company (File#: 20210083; Bond#: 602-133026-4).

**NCAC'S RESPONSE:**      NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

24.      IQ Data is a corporation with its principal place of business located at 21222 30th Drive SE C210 Bothell, WA 98021-7012. IQ Data's registered agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company located at 211 E. 7th Street, Suite 620, Austin, TX 78701. IQ Data is a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. § 1681s-2(b). IQ Data is also a "debt collector" as that term is defined by Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection is the principal purpose of IQ Data's business. IQ Data is a Texas registered debt collector and is also bonded in Texas through Liberty Mutual Insurance Company (File#: 20150118; Bond#: 016065812).

**NCAC'S RESPONSE:**      NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

25.      All Defendants regularly conduct business in the state of Texas.

**NCAC'S RESPONSE:**      NCAC denies the allegations against it and lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

## FACTS

**A.    Identity theft issues.**

26.    Plaintiff is unsure how her identity was stolen. Plaintiff first learned of the identity theft in 2022, and now, after more than two years have passed, she is still working to clear fraudulent accounts that have been reported to the credit reporting agencies.

**NCAC'S RESPONSE:**    NCAC admits only that Plaintiff sent it a Johnson City Police Department report dated May 31, 2022, in which Plaintiff stated that she "believed she was a victim of identity theft," together with a Granbury Police Department report dated March 20, 2023 in which Plaintiff stated that "someone has been using her identity to rent apartments in the metroplex area." NCAC lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

27.    Plaintiff has taken innumerable steps to combat the false reporting that has resulted from the theft of her identity, including the below police reports and Identity Theft Reports:

- May 31, 2022: Submitted a Federal Trade Commission ("FTC") Identity Theft Report regarding a "Mag and May" account with a balance of $9,481.00;

- May 31, 2022: Filed a report with the Johnson City Police Department after meeting with a Lieutenant in person;

- July 15, 2022: Put fraud alerts on her Equifax, Experian, and Trans Union credit reports;

- July 15, 2022: Put a security freeze on her Equifax, Experian, and Trans Union credit reports;

- July 21, 2022: Submitted another FTC Identity Theft Report regarding four new fraudulent accounts that Plaintiff discovered on her credit reports;

- September 14, 2022: Received information from the Johnson City Police Department about one of the fraudulent apartment lease applications;

- March 20, 2023: Filed a report with the Granbury Police Department about 5 more fraudulent accounts that appeared on Plaintiff's credit reports.

**NCAC'S RESPONSE:**    NCAC admits only that Plaintiff sent it a Johnson City Police Department report dated May 31, 2022, in which Plaintiff stated that she "believed she was a victim of identity theft," together with a Granbury Police Department report dated March 20, 2023 in which Plaintiff stated that "someone has been using her identity to rent apartments in the metroplex area."   NCAC lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

28.    Through a great deal of perseverance, expense, and emotional distress many of the reported false accounts have been closed and removed from Plaintiff's credit reports. However, several fraudulent items remain; and with regard to the items that were ultimately removed, their removal did not occur in any reasonable or timely fashion, such that these items also provide the basis for violations of the FCRA, FDCPA and the TDCA.

**NCAC'S RESPONSE:**    NCAC admits only that it closed the debt account that it had been attempting to collect from Plaintiff [i.e., ceased all collection activity, including but not limited to reporting information about the debt account to consumer

reporting agencies] on April 3, 2024.  NCAC lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

**B.    Facts Related to Rent Recovery Solutions, LLC.**

29-58.        [DIRECTED AGAINST A PARTY OTHER THAN NCAC].

**NCAC'S RESPONSE:**        NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

**C.    Facts related to National Credit Audit Corporation.**

59.    Credit Audit [NCAC] is a third-party debt collector that furnishes information to Equifax, Experian, and Trans Union to collect third-party debts.

**NCAC'S RESPONSE:**        Denied. By way of further response, NCAC ceased operations effective December 31, 2024.

60.    On March 31, 2023, Plaintiff discovered another collections account on her credit reports that did not belong to her. Credit Audit [NCAC] was reporting a false collection in which the original creditor was Alexan Las Colinas Apartments ("Alexan") to Trans Union, Experian and Equifax. The collection stemmed from a fraudulent apartment lease.

**NCAC'S RESPONSE:**        NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.  By way of further response, Plaintiff's statements on her police reports indicate that Plaintiff knew or should have known about the debt account that NCAC was attempting to collect from her on May 31, 2022, and not later than December 13, 2022, such that Plaintiff's claims are time-barred.

61.     Plaintiff's credit reports showed that Credit Audit [NCAC] reported the false Alexan account to Equifax, Experian and Trans Union under account number D4603**** as a derogatory account opened by Plaintiff that was in collections for $7073.00.

**NCAC'S RESPONSE:**     NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

62.     On April 11, 2023, Plaintiff sent dispute letters, via certified mail, to Experian, Trans Union and Equifax stating that the Alexan collection account was the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters. USPS tracking shows Experian received its dispute letter on April 14, 2023, Trans Union received its dispute letter on April 28, 2023, and Equifax received the dispute letter on April 21, 2023.

**NCAC'S RESPONSE:**     NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

63.     Upon information and belief, Experian, Equifax and Trans Union forwarded Plaintiff's April 2023 certified dispute letters regarding the false Alexan collection account to Credit Audit [NCAC] for investigation.

**NCAC'S RESPONSE:**     Admitted.

64.     Plaintiff received a response from Trans Union on May 24, 2023 stating that the Alexan account had been verified as accurate by Credit Audit [NCAC].

**NCAC'S RESPONSE:**     NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

65.    Plaintiff did not receive a response to her April 2023 dispute letters from Experian or Equifax.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

66.    On June 13, 2023, Plaintiff accessed her credit reports and found that Credit Audit [NCAC] was still reporting the false Alexan collection to Plaintiff's Experian, Equifax and Trans Union credit reports.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

67.    On June 13, 2023, Plaintiff sent another round of dispute letters, via certified mail, to Equifax, Trans Union and Experian stating that the Alexan collection account was the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters. USPS tracking shows Equifax received its dispute letter on June 22, 2023, Experian received its dispute letter on June 20, 2023, and Trans Union received its dispute letter on June 21, 2023.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

68.    Upon information and belief, Experian, Equifax and Trans Union forwarded Plaintiff's June 2023 certified dispute letters regarding the false Alexan collection account to Credit Audit [NCAC] for investigation.

**NCAC'S RESPONSE:**    Admitted.

69.    Plaintiff did not receive a response to her June 2023 certified letters from Experian, Equifax or Trans Union.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

70.    On August 15, 2023, Plaintiff accessed her credit reports and discovered that Experian and Equifax had removed the false Alexan collections account tradeline from her credit reports. However, Credit Audit [NCAC] was still reporting the false Alexan collection account tradeline on Plaintiff's Trans Union credit report.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

71.    On January 28, 2024, Plaintiff accessed her credit reports and discovered that Credit Audit [NCAC] was still reporting the false Alexan collection account to Trans Union. In addition, Plaintiff discovered that the false Alexan collection account had reappeared on her Equifax credit report. Credit Audit [NCAC] had again reported the false Alexan collection account to Equifax on December 1, 2023 after Equifax had removed the false tradeline.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

72.    On February 21, 2024, Plaintiff sent another round of dispute letters, via certified mail, to Trans Union and Equifax stating that the Alexan collection account was the result of her identity being stolen and should be removed from her credit file. Plaintiff included the Johnson City Police and Granbury Police reports with these dispute letters.

USPS tracking shows Trans Union received its dispute letter on February 26, 2024, and Equifax received its dispute letter on March 1, 2024.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

73.    Upon information and belief, Equifax and Trans Union forwarded Plaintiff's February 2024 certified dispute letters regarding the false Alexan collection account to Credit Audit [NCAC] for investigation.

**NCAC'S RESPONSE:**    Admitted.

74.    On March 11, 2024, Plaintiff received a response to her March 2024 dispute letter from Trans Union. The response included investigation results that stated the Alexan collection account had been reinserted into Plaintiff's credit report due to the account being verified by Credit Audit [NCAC].

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.  By way of further response, NCAC states that it closed the debt account that it had been attempting to collect from Plaintiff [*i.e.*, ceased all collection activity, including but not limited to reporting information about the debt account to consumer reporting agencies] on April 3, 2024.

75.    Plaintiff did not receive a response to her March 2024 certified letter from Experian or Equifax.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

76.     On March 8, 2024, Plaintiff accessed her credit reports and discovered that Trans Union had removed the false Alexan tradeline from her credit report. However, Credit Audit [NCAC] was still reporting the false Alexan collection account tradeline on Plaintiff's Equifax credit report.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.  By way of further response, NCAC states that it closed the debt account that it had been attempting to collect from Plaintiff [*i.e.*, ceased all collection activity, including but not limited to reporting information about the debt account to consumer reporting agencies] on April 3, 2024.

77.     On August 19, 2024, Plaintiff accessed her credit reports and discovered that Equifax had removed the false Alexan tradeline from her credit reports.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.  By way of further response, NCAC states that it closed the debt account that it had been attempting to collect from Plaintiff [*i.e.*, ceased all collection activity, including but not limited to reporting information about the debt account to consumer reporting agencies] on April 3, 2024.

78.     Prior to reporting the false Alexan collections account to the credit reporting agencies, Credit Audit [NCAC] failed to notify Plaintiff of the possible reporting under Regulation F. 12 CRF part 1006.

**NCAC'S RESPONSE:**    Denied.

79.    Credit Audit [NCAC] Rent "parked" the adverse information on Plaintiff's credit reports, without providing advanced notice, in an attempt to collect on the false Alexan collection account in which Plaintiff did not owe.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

80.    The fraudulent debt that Credit Audit [NCAC] attempted to collect from Plaintiff is a consumer debt as it related to an apartment at Alexan.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

81.    Credit Audit [NCAC] misrepresented the character, extent, and amount of the debts from Plaintiff as collectible, when in fact it was the product of identity theft and therefore not collectible from Plaintiff.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

**D.    Facts related to ProCollect, Inc.**

82-133.    [DIRECTED AGAINST A PARTY OTHER THAN NCAC].

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

**F.    Facts related to IQ Data International Inc.**

134-151.    [DIRECTED AGAINST A PARTY OTHER THAN NCAC].

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

**G.    Defendants' actions have damaged Plaintiff**

152.    The Defendants' actions have damaged Plaintiff financially. In addition, Defendants' actions have caused Plaintiff to suffer embarrassment, humiliation, mental anguish, frustration, anxiety, emotional distress and interference with usual activities. Plaintiff has also experienced feelings of helplessness, loss of financial control and independence, fear of monetary loss or loss of property, as well as other harmful and negative emotions. Plaintiff has also suffered reputational harm.

**NCAC'S RESPONSE:**    NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

153.    As a direct result of the Defendants' derogatory reporting of the aforementioned false collection accounts, Plaintiff was twice denied a home loan after years of saving and advancing in her career.

**NCAC'S RESPONSE:**    NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

154.    Defendants failed to investigate and/or maintain procedures reasonably adapted to avoid collection and reporting of false debts that stemmed from services and apartment leases that Plaintiff never applied for or authorized.

**NCAC'S RESPONSE:**    NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

155.     Defendants' actions have also violated Plaintiff's privacy as they have published these errors to third parties.

**NCAC'S RESPONSE:**     NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

156.     Plaintiff has suffered damages proximately caused by the conduct of one or more of the Defendants, including:

a.     Emotional distress, damage to reputation, humiliation, guilt, stress, anxiety, frustration, mental pain, anguish, distress, and loss of focus and production;

b.     Time and expense of pulling/reviewing credit reports and meeting with professionals about how to best proceed;

c.     Believing that the erroneous accounts may continue to be reported inaccurately and misleadingly through no fault of Plaintiff's and have a chilling effect on ability to obtain credit;

d.     Adverse information on credit reports and a negative impact to credit rating;

e.     An inability to improve credit scores during the dispute process;

f.     An inability to qualify for financing;

g.     Invasion of privacy;

h.     A lower credit score; and

i.     Having to hire attorneys to combat the improper credit reporting, and also defend the Harris County lawsuit.

**NCAC'S RESPONSE:**    NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

## TYPES OF RELIEF UNDER THE FDCPA & TDCA

157.    Under the FDCPA, 15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

158.    Under the TDCA, "[a] person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter; and (2) actual damages sustained as a result of a violation of this chapter." Tex. Fin. Code Ann. § 392.403(a)(1)-(2).

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

## INJUNCTIVE RELIEF UNDER THE TDCA

159.    Plaintiff seeks to "prevent or restrain" Defendants from all attempts to collect from her unless or until there has been any final adjudication as per Tex. Lab. Code. Ann. § 413.042(a).

**NCAC'S RESPONSE:**    NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

160.    A suit under the TDCA may be maintained merely for injunctive relief, without alleging or proving actual damages. *See Marauder Corp. v. Beall*, 301 S.W.3d 817 (Tex. App. - Dallas 2009, reh'g denied) (A TDCA action "may be for actual damages or an injunction").

**NCAC'S RESPONSE:**    NCAC admits only that Plaintiff has paraphrased a judicial opinion.  NCAC denies these allegations to the extent that they are inconsistent with or contrary to the opinion in its entirety.

**COUNT I – Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data FCRA - Failure to investigate.**

161.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

**NCAC'S RESPONSE:**    NCAC incorporates its prior Responses as though each Response was set forth here in full.

162.    Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A), after Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data receive notice of a "dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, [they] shall conduct an investigation with respect to the disputed information."

**NCAC'S RESPONSE:**    Admitted.

163.    Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A), after Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data receive notice of a "dispute with regard to the completeness or accuracy of any information provided by a person to

a consumer reporting agency, [they] shall review all relevant information provided by the consumer reporting agency…"

      **NCAC'S RESPONSE:**      Admitted.

164.    Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data an opportunity to review Plaintiff's dispute letters and conduct a reasonable investigation.

      **NCAC'S RESPONSE:**      NCAC lacks knowledge or information sufficient to form a belief about the truth of these allegations.

165.    Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data failed to fully and properly investigate Plaintiff's disputes relating to fraudulent collections that stemmed from identity theft.

      **NCAC'S RESPONSE:**      NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

166.    Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data failed to review all relevant information provided by Equifax, Experian, or Trans Union relating to Plaintiff's many disputes.

      **NCAC'S RESPONSE:**      NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

167. Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data's conduct, actions, and inactions were willful, or, in the alternative, negligent.

**NCAC'S RESPONSE:** NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

168. Plaintiff suffered embarrassment, humiliation, and emotional distress because of Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data's failure to fully and properly investigate Plaintiff's disputes.

**NCAC'S RESPONSE:** NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in Plaintiff's favor and against Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data, awarding the following relief:

a. Appropriate statutory penalties for each violation of the FCRA;
b. Actual damages;
c. Punitive damages;
d. Reasonable attorney's fees and the costs of this litigation;
e. Pre-judgment and post-judgment interest at the legal rate;
f. Appropriate equitable relief, including the correction of Plaintiff's credit reports; and
g. Such other relief as the Court deems equitable, just, and proper.

**NCAC'S RESPONSE:** NCAC prays this Honorable Court to grant judgment in favor of NCAC and to grant NCAC such other and further relief as the Court deems right and just.

**COUNT II – Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, and Columbia - Violations of the FDCPA**

169.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

**NCAC'S RESPONSE:**    NCAC incorporates its prior Responses as though each Response was set forth here in full.

170.    Section 1692e(2)(A) prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which also includes the false representation of "**the character, amount, or legal status of any debt**." (emphasis added).

**NCAC'S RESPONSE:**    NCAC admits only that Plaintiff has quoted a portion of the FDCPA's statutory text.  NCAC denies these allegations to the extent that they are inconsistent with or contrary to the statutory text in its entirety.

171.    The foregoing acts and omissions of Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, and Columbia constitute violations of the FDCPA including but not limited to violation of 15 U.S.C. §1692e and §1692f by publishing false credit information about Plaintiff to the credit reporting agencies; misrepresenting the amount, status, and character of Plaintiff's alleged collections in the credit information provided to the credit reporting agencies, and attempting to collect a debt from Plaintiff that she does not owe.

**NCAC'S RESPONSE:**       NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

172.    Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, and Columbia violated Section 1692e(2)(A) by attempting to collect a debt from Plaintiff which, by law, she did not owe because it was the product of identity theft.

**NCAC'S RESPONSE:**       NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

173.    The Fifth Circuit has ruled that the issue of "Whether a debt is legally enforceable is a central fact about the character and legal status of that debt. A misrepresentation about that fact thus violates the FDCPA." *Manuel*, 956 F.3d at 829; *Daugherty*, 836 F.3d at 511-12. "Debt collectors may not make false claims, period." *Randolph v. IMBS Inc.*, 368 F.3d 726, 730 (7th Cir. 2004).

**NCAC'S RESPONSE:**       NCAC admits only that Plaintiff has paraphrased judicial opinions. NCAC denies these allegations to the extent that they are inconsistent with or contrary to the opinions in their entirety.

174.    As a result of Defendants' violations of the FDCPA, Plaintiff is entitled from Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, and Columbia: actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

**NCAC'S RESPONSE:**    NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against Defendants Rent Recovery, Credit Audit, ProCollect, and Columbia, awarding the following relief:

a.    Statutory damages of an amount not to exceed $1,000 dollars total, for all violations, under 15 U.S.C. § 1692k(a)(2)(A);
b.    Actual damages under 15 U.S.C. § 1692k(a)(1);
c.    Reasonable attorney's fees and costs of the action under 15 U.S.C. § 1692k(a)(3); and
d.    Such other or further relief as the Court deems just proper.

**NCAC'S RESPONSE:**    NCAC prays this Honorable Court to grant judgment in favor of NCAC and to grant NCAC such other and further relief as the Court deems right and just.

**COUNT III – Defendants Rent Recovery, Credit Audit, ProCollect, Columbia, and IQ Data – TEXAS DEBT COLLECTION ACT – Violation of Tex. Fin. Code Ann. §§ 392.304(a)(8) & 392.304(a)(19)**

175.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

**NCAC'S RESPONSE:**    NCAC incorporates its prior responses as though each Response was set forth here in full.

176.    A debt collector may not use any fraudulent, deceptive, or misleading representation that "misrepresent[s] the character, extent, or amount of a consumer debt...." *See* <u>TEX. FIN. CODE § 392.304(a)(8)</u>.

**NCAC'S RESPONSE:**    NCAC admits only that Plaintiff has quoted a portion of statutory text. NCAC denies these allegations to the extent that they are inconsistent with or contrary to the statutory text in its entirety.

177.    A debt collector may not use "any other false representation or deceptive means to collect a debt...." *See* TEX. FIN. CODE § 392.304(a)(19).

**NCAC'S RESPONSE:**    NCAC admits only that Plaintiff has quoted a portion of statutory text. NCAC denies these allegations to the extent that they are inconsistent with or contrary to the statutory text in its entirety.

178.    For the same reasons that the Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, and Columbia are liable under §§ 1692e, 1692e(2)(A) of the FDCPA in Count II above, Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data are also liable under §§ 392.304(a)(8) & 392.304(a)(19) of the Texas Finance Code.

**NCAC'S RESPONSE:**    NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

179.    Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data are all liable under §§ 392.304(a)(8) for misrepresenting the character, extent, and amount of the debt as collectible, when in fact it was the product of identity theft. Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data further made false representations or deceptive means to collect the debt from Plaintiff and are thus liable under §§ 392.304(a)(8) & 392.304(a)(19).

**NCAC'S RESPONSE:**    NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

180.    Defendants Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data attempted to collect a consumer debt from Plaintiff that she did not owe.

**NCAC'S RESPONSE:**    NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

181.    "A person may sue for: (1) injunctive relief to prevent or restrain a violation of of this chapter; and (2) actual damages sustained as a result of a violation of this chapter." *See* TEX. FIN. CODE § 392.403(a)(1)-(2). "A person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs." *See* TEX. FIN. CODE § 392.403(b). Tex. Fin. Code Ann. § 392.102 authorizes a plaintiff to sue both the third-party collectors (Rent Recovery, Credit Audit [NCAC], ProCollect, Columbia, and IQ Data).

182.    The Defendants have reported to the credit reporting agencies that Plaintiff, an identity theft victim, is responsible for the repayment of debts related to apartment leases for units she never lived in and services she did not receive, as part of their debt collection activities. Plaintiff prays for injunctive relief to stop all future such activities.

**NCAC'S RESPONSE:**    NCAC denies the allegations directed against it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.  By way of further response, NCAC states that it closed the debt

account that it had been attempting to collect from Plaintiff [*i.e.*, ceased all collection activity, including but not limited to reporting information about the debt account to consumer reporting agencies] on April 3, 2024.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against Defendants Rent Recovery, Credit Audit, ProCollect, and Columbia, awarding the following relief:

      a.      Injunctive relief to prevent or restrain any violations of the TDCA as provided TEX. FIN. CODE § 392.403(a)(1);

      b.      Actual damages under TEX. FIN. CODE § 392.403(a)(2);

      c.      Reasonable attorney's fees, litigation expenses and costs of suit under TEX. FIN. CODE § 392.403(b);

      d.      Such other or further relief as the Court deems just proper.

**NCAC'S RESPONSE:**      NCAC prays this Honorable Court to grant judgment in favor of NCAC and to grant NCAC such other and further relief as the Court deems right and just.

## JURY

Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

**NCAC'S RESPONSE:**      NCAC also demands a trial by jury on all issues that are subject to a jury trial.

## AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), and without assuming any burdens of proof or persuasion that would otherwise rest on Plaintiff, ClearStar asserts the following additional or affirmative defenses.

I.      Plaintiff's alleged damages were caused or contributed to by Plaintiff's own actions and/or the actions of persons or entities other than NCAC, over whom NCAC had no control and for whom NCAC had no responsibility.

II.     Plaintiff has failed to mitigate the alleged damages.

III.    NCAC complied, in good faith, with the Fair Credit Reporting Act, Fair Debt Collection Practices Act, Texas Debt Collection Act, and all other relevant law.

IV.     Plaintiff's claims against NCAC are barred by the applicable statutes of limitation.

V.      NCAC reserves its right to assert additional affirmative defenses at such time and to such extent as warranted by its ongoing discovery of the facts of this case.

VI.     NCAC reserves any and all rights that it has, under the due process clause of the United States Constitution, to challenge the quantum of and award of any punitive damages that may be sought or imposed against it.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, NCAC prays this Honorable Court to issue an Order which dismisses Plaintiff's claims against NCAC and grants NCAC such other and further relief as the Court deems right and just.

/s/ Jason A. Spak
Jason A. Spak
FISHERBROYLES, LLP
6360 Broad Street #5262
Pittsburgh, PA 15206
T: 412-230-8555
F: 412-774-2382
E: jason.spak@fisherbroyles.com
*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2025, I filed the foregoing ANSWER, AFFIRMATIVE DEFENSES, AND JURY DEMAND with the Court's Electronic Case Filing (ECF) system, which will send a Notice of Electronic Filing (NEF) to, and thereby effect service upon, all parties through their counsel of record.

<u>/s/ Jasson A. Spak</u>
Jason A. Spak
*Counsel for Defendant*